IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXI ZUNIGA, JOSEPH DE FELICE, JACKIE MALCOMB, JAMES MAMULA,<br><br>           Plaintiffs,<br>      v.<br><br>CHUGACH MAINTENANCE SERVICES, et al.,<br><br>           Defendants. | CV F 06-0048 AWI LJO<br><br>MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS, DENYING MOTION TO STRIKE, AND DISMISSING COMPLAINT WITH LEAVE TO AMEND<br><br>(Documents #5 & #6) |

This removed action concerns employment actions taken by Defendants. Plaintiffs allege violations of state employment laws. Defendants contend that this court has jurisdiction pursuant to 28 U.S.C. § 1331 because the employment actions took place on a federal enclave.

## BACKGROUND

On April 14, 2005, Plaintiffs filed an action in the Kern County Superior Court. The first cause of action alleges tortuous discharge in violation of public policy. The second cause of action alleges a violation of California Labor Code § 6310 for retaliating against an employee who protests unsafe or unhealthy working conditions. The third cause of action alleges fraud. The Kern County Superior Court originally dismissed the action, but on December 14, 2005, the Kern County Superior Court set aside the dismissal. On January 12, 2006, Defendants removed the action to this court. Defendants contend that this court has subject matter jurisdiction

because the events occurred at Edwards Air Force Base, which Defendants allege is a federal enclave.

On January 19, 2006, Defendants filed a motion to strike and a motion to dismiss. Defendant contend that the first cause of action is barred by the federal enclave doctrine. Defendants contend the third cause of action should be dismissed because no claim for fraud exists under California law in the employment termination context.  Defendants contend punitive damages are not allowed for the second cause of action under California law.  The motions were scheduled for a court hearing to be held on March 6, 2006.

On February 27, 2006, Defendants filed a reply brief.

Because Plaintiffs did not file a timely opposition, on February 28, 2006, the court took Defendants' motions under submission.

The undersigned received a courtesy copy of an opposition to the motion to strike and an opposition to the motion to dismiss.  After being notified that the courtesy copies had not been filed, on February 28, 2006, Plaintiffs filed their oppositions.   Plaintiffs contend this action is not governed and controlled by the federal enclave doctrine and this court lacks jurisdiction. Plaintiffs seek leave to file an amended complaint to contain additional facts.

## LEGAL STANDARDS

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle him to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Balistreri v. Pacifica Police Department, 901 F.2d 696, 699 (9th Cir. 1990).  A Rule 12(b)(6) dismissal can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.1984).   In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in

2

the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969).

Rule 12(f) of the Federal Rules of Civil Procedure allows the court to strike from "any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  The purpose of a Rule 12(f) motion is to avoid the costs that arise from litigating spurious issues by dispensing with those issues prior to trial.  Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir.1983).  Immaterial matter is defined as matter that "has no essential or important relationship to the claim for relief or the defenses being pleaded."  Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir 1993) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706-07 (1990)), *rev'd on other grounds*, 510 U.S. 517 (1994).  Impertinent matter is defined as "statements that do not pertain, and are not necessary, to the issues in question."  Fantasy, Inc. 984 F.2d at 1527.  Granting a motion to strike may be proper if it will make the trial less complicated or if allegations being challenged are so unrelated to plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading will be prejudicial to the moving party.  Id.

**FACTS**

**A.  Complaint's Allegations**

As a general matter, a court may not consider any material outside of the complaint when ruling on a Rule 12(b)(6) motion.  Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir.2001); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  If the parties present the court with evidence outside the pleadings and the court considers the evidence, the court must convert the Rule 12(b)(6) motion into a motion for summary judgment.  Fed. R. Civ. Pro. 12(b)(6); Anderson v. Angelone, 86 F.3d 932, 934-35 (9th Cir.1996).  The following relevant facts are alleged in Plaintiffs' complaint:

The complaint alleges that Plaintiffs were employees of Defendant Chugach Maintenance Services ("Chugach").

3

1   The complaint alleges that throughout their scope of employment with Chugach,
2 Plaintiffs were subjected to harassment from Chugach and its employees.  The complaint alleges
3 that Defendants would unnecessarily reprimand Plaintiffs when Plaintiffs reported acts of
4 misconduct by their supervisors and Defendants denied Plaintiffs safety equipment when
5 working in hazardous environments.
6   The complaint alleges that as a result of Plaintiffs' whistle blowing and complaints,
7 Plaintiffs' positions were terminated.  Shortly after, Defendants reinstated Plaintiffs' former
8 positions and hired new staff to replace Plaintiffs.

**B. Judicial Notice**

10   There are exceptions to Rule 12(b)(6)'s requirement that extrinsic evidence cannot be
11 considered without converting the motion to a summary judgment motion.  The court may
12 consider documents over which the court may take judicial notice.  Lee, 250 F.3d at 689; Mack
13 v. South Bay Beer Distrib., 798 F.2d 1279, 1282 (9th Cir.1986).
14   Defendants ask the court to take judicial notice of the fact that Edwards Air Force Base
15 has been a United States Military Base since the 1930's.  Plaintiffs offer no reason for the court
16 to not take judicial notice of this fact.  The court may take notice of facts that are capable of
17 accurate and ready determination by resort to sources whose accuracy cannot reasonably be
18 questioned.  Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir.
19 1993).  The court will take judicial notice of the fact that Edwards Air Force Base has been a
20 United States Military Base since the 1930's.
21   In addition, Defendants ask the court to take judicial notice of the complaint filed in the
22 Kern County Superior Court, the Kern County Superior Court's dismissal of this action, the Kern
23 County Superior Court's order setting aside the dismissal, and Defendants' notice of removal.
24 Judicial notice may be taken of court records.  See Mullis v. United States Bank. Ct., 828 F.2d
25 1385, 1388 n.9 (9th Cir. 1987);  Egan v. Teets, 251 F.2d 571, 578 (9th Cir. 1957); Valerio v.
26 Boise Cascade Corp., 80 F.R.D. 626, 635 n. 1 (N.D. Cal.1978).  However, "a court may not take

judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it." M/V Am. Queen v. San Diego Marine Constr. Corp., 708 F.2d 1483, 1491 (9th Cir.1983).  Thus, while the court will take judicial notice of court records, the court will not consider the records for the truth of the facts asserted within them.

## DISCUSSION

**A.  Jurisdiction**

This case was removed from the Kern County Superior Court to this court upon on the ground that this court has subject matter jurisdiction based upon 28 U.S.C. § 1331, the federal question statute, because the events in question occurred on Edwards Air Force Base.  In their opposition, Plaintiffs question whether federal jurisdiction is appropriate under the federal enclave doctrine.

Title 28 U.S.C. § 1441(b) reads in relevant part: "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties."  "The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction."  Prize Frize Inc. v. Matrix Inc., 167 F.3d 1261, 1265 (9th Cir. 1999); Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir. 1988).  If there is any doubt as to the right of removal in the first instance, "federal jurisdiction must be rejected." Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996); Gaus v. Miles, Inc., 980 F. 2d 564, 566 (9th Cir. 1992).

"The presence or absence of federal question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." California v. United States, 215 F.3d 1005, 1014 (9th Cir. 2000); see also California ex. rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (9th Cir. 2004); Duncan, 76 F.3d at 1485.  Under the "well-

5

pleaded complaint" rule, courts look to what "necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything in anticipation of avoidance of defenses which it is thought the defendant may interpose." California, 215 U.S. at 1014. Generally, "a case may not be removed on the basis of a federal defense . . . even if the defense is anticipated in the plaintiff's complaint and both parties concede that the federal defense is the only question truly at issue." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987); Wayne v. DHL Worldwide Express, 294 F.3d 1179, 1183 (9th Cir. 2002). "In addition, the plaintiff is the 'master' of her case, and if she can maintain her claims on both state and federal grounds, she may ignore the federal question, assert only state claims, and defeat removal." Duncan, 76 F.3d at 1485. However, the "artful pleading doctrine is a corollary to the well-pleaded complaint rule, and provides that although the plaintiff is the master of his own pleadings, he may not avoid federal jurisdiction by omitting form the complaint allegations of federal law that are essential to the establishment of his claim." Lippitt v. Raymond James Fin. Serv., 340 F.3d 1033, 1041 (9th Cir. 2003).

"If at any time prior to judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). A district court has "a duty to establish subject matter jurisdiction over the removed action *sua sponte*, whether the parties raised the issue or not." United Investors Life Ins. Co. v. Waddell & Reed, Inc., 360 F.3d 960, 967 (9th Cir. 2004). "Thus, the court can, in fact must, dismiss a case when it determines that it lacks subject matter jurisdiction, whether or not a party has a filed a motion." Page v. City of Southfield, 45 F.3d 128, 133 (6th Cir. 1995). In other words, a district court may remand a removed case *sua sponte* if it determines that it lacks subject matter jurisdiction over the case. See Parker v. Ho Sports Co., 2005 U.S. Dist. LEXIS 37289 at *1 (E.D. Cal. 2005); Knutson v. Allis-Chalmers Corp., 358 F. Supp. 2d 983, 990 (D. Nev. 2005); Tortola Restaurants, L.P. v. Kimberly-Clark Corp., 987 F. Supp. 1186, 1188 (N.D. Cal. 1997); cf. Kelton Arms Condo. Homeowners Ass'n v. Homestead Ins. Co., 346 F.3d 1190, 1192-93 (9th Cir. 2003) (holding that

court may not *sua sponte* remand for procedural defects in removal but noting a distinction between procedural and jurisdictional defects and that a "district court must remand if it lacks jurisdiction").

      The basis of jurisdiction in this action is Defendants' allegations that the facts underlying this action occurred on a federal enclave. The Ninth Circuit has indicated that personal injury actions arising from incidents occurring on federal enclaves may support the district court's jurisdiction under Section 1331. Willis v. Craig, 555 F.2d 724, 726 (9th Cir.1977); Mater v. Holley, 200 F.2d 123 (5th Cir.1952); Fung v. Abex Corp., 816 F.Supp. 569, 571 (N.D.Cal.1992). In this case, there is a question of whether this is subject to federal jurisdiction because the events underlying this action occurred on a federal enclave. Whether federal enclave jurisdiction exists is a complex question, resting on such factors as where the events underlying the action occurred on the property, whether the federal government exercises exclusive or concurrent jurisdiction over the property, when the property became a federal enclave and what the state law was at that time, whether that law is consistent with federal policy, and whether it has been altered by national legislation. See Celli v. Shoell, 40 F.3d 324, 328 (10th Cir.1994). In an action, such as this one, where the Defendants maintain the federal enclave doctrine allows for federal jurisdiction, the Ninth Circuit has remanded the action to the district court to make a finding on whether federal enclave jurisdiction exists. See, e.g., Willis, 555 F.2d at 726. Thus, to determine if this court has jurisdiction, the court must decide whether the federal enclave doctrine applies to this case.

**B. Federal Enclave**

      Defendant contends that the court has jurisdiction under the federal enclave doctrine. The Federal Enclave Clause provides that:

> The Congress shall have power . . . To exercise exclusive legislation in all Cases whatsoever, over such District (not exceeding ten miles square) as may, by Cession of particular states, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in Which the Same Shall be, for the Erection of Forts, Magazines, Arsenals, dock- Yards, and

7

other needful Buildings. . . .

U.S. Const. art. I, § 8, cl. 17.   Only federal law applies on a federal enclave under exclusive federal jurisdiction, except to the extent Congress has otherwise provided.  See Pacific Coast Dairy v. Department of Agriculture of California, 318 U.S. 285, 294 (1943).  However, in order to ensure that no such area is left without a developed legal system for private rights, preexisting state law not inconsistent with federal policy becomes federal law and remains in existence until altered by national legislation.  Id. at 294.

Under Article 1, section 8, clause 17 of the United States Constitution, the United States can obtain exclusive federal jurisdiction over land with the consent of the state.  Paul v. United States, 371 U.S. 245, 264 (1963).   This can be accomplished through a consensual acquisition or by a condemnation followed by a cession of jurisdiction.  United States v. Jenkins, 734 F.2d 1322, 1325 n.3 (9th Cir. (1983).  After the state consents, the United States must formally accept exclusive federal jurisdiction.  40 U.S.C. § 3112;  Paul, 371 U.S. at 264; Jenkins, 734 F.2d at 1325 n.3.  When the Federal Enclave Clause is complied with, the state loses all legislative power over the property in question, except such authority as it explicitly reserves to itself in ceding jurisdiction.  Paul, 371 U.S. at 263-69; Fort Leavenworth R. Co. v. Lowe, 114 U.S. 525 (1885).

Historically, when a cession conferred a benefit to the federal government the courts presumed a formal acceptance of exclusive federal jurisdiction by the United States in absence of any dissent.  S. R. A., Inc. v. State of Minn., 327 U.S. 558, 563 & n.7 (1946).  Until 1940 it appears that, although the Courts recognized the United States could decline to accept exclusive jurisdiction over land it acquired, nonetheless, acceptance was presumed in the absence of evidence indicating a rejection.  See Humble Pipe Line Co. v. Waggonner, 376 U.S. 369, 370-74 (1964) (citing cases); see also Fort Leavenworth R.R. Co. v. Lowe, 114 U.S. 525 (1884). However, during the 1930's, the Supreme Court decided a series of cases involving whether general state cessions of jurisdiction were valid without federal government acceptance of that

8

jurisdiction. Collins v. Yosemite Park & Curry Co., 304 U.S. 518, 522-24 (1938); James v. Dravo Contracting Co., 302 U.S. 134, 141-42, 146-49 (1937); Silas Mason Co. v. Tax Commission of Washington, 302 U.S. 186, 197-99 (1937). Each case involved litigants seeking to avoid application of state law, arguing that general automatic state ceding statutes--which ceded jurisdiction upon the mere acquisition of property by the federal government-- precluded enforcement of state laws. In all three cases, the Supreme Court noted that the United States could not be forced to accept unwanted legislative jurisdiction, and held that the general ceding statutes were insufficient in themselves to transfer legislative authority. See Collins, 304 U.S. at 527-28; Silas Mason Co., 302 U.S. at 207; James, 302 U.S. at 147-48. Congress responded to these decisions by enacting 40 U.S.C. § 255, which set forth how the United States could obtain and accept grants of jurisdiction by the states. Exclusive federal jurisdiction over federal land, once covered by 40 U.S.C. § 255, is now covered by 40 U.S.C. § 3112, which provides:

> (a) Exclusive jurisdiction not required.--It is not required that the Federal Government obtain exclusive jurisdiction in the United States over land or an interest in land it acquires.
> (b) Acquisition and acceptance of jurisdiction.--When the head of a department, agency, or independent establishment of the Government, or other authorized officer of the department, agency, or independent establishment, considers it desirable, that individual may accept or secure, from the State in which land or an interest in land that is under the immediate jurisdiction, custody, or control of the individual is situated, consent to, or cession of, any jurisdiction over the land or interest not previously obtained. The individual shall indicate acceptance of jurisdiction on behalf of the Government by filing a notice of acceptance with the Governor of the State or in another manner prescribed by the laws of the State where the land is situated.
> (c) Presumption.--It is conclusively presumed that jurisdiction has not been accepted until the Government accepts jurisdiction over land as provided in this section.

In Paul, the Supreme Court considered the enforceability of California's wholesale milk price regulations with respect to milk sold to the United States at three military installations (Travis Air Force Base, Castle Air Force Base, and Oakland Army Terminal). Paul, 371 U.S. at 247. Citing 40 U.S.C. § 255, the Supreme Court clearly stated that the United States must assent to jurisdiction for a federal enclave to have exclusive federal jurisdiction. Id. at 264-65 & n.30.

9

The Supreme Court concluded that because the state milk regulations were not in effect at the time much of the land at issue was ceded to the United States and such laws conflicted with federal procurement policy, they could not be enforced if the property was a federal enclave with exclusive federal jurisdiction.  Id. at 269.

Defendants have provided evidence, over which this court takes judicial notice, that Edwards Air Force Base became a military establishment in 1930.  However, neither the complaint nor the facts over which this court takes judicial notice indicate where the events underlying this action occurred.   The key factor in determining whether federal enclave jurisdiction exists is the location of the plaintiff's injury. See, e.g., Akin v. Ashland Chem. Co., 156 F.3d 1030, 1035 (10th Cir. 1998) (affirming district court's ruling that the notice of removal was timely because the complaint was ambiguous as to where plaintiffs were exposed to asbestos and only after receipt of answers to interrogatories were defendants provided sufficient notice that conduct took place wholly within federal enclave, ); Roll v. Tracor, Inc., 140 F.Supp.2d 1073, 1978 n.2 (D. Nev. 2001)  (choice-of-law rule for state applied because location of accident was not a federal enclave); Hines v. AC & S, Inc., 128 F.Supp.2d 1003, 1005 (N.D.Tex.2001) (determining whether the exposure occurred on a federal enclave); Anderson v. Crown Cork & Seal, 93 F.Supp.2d 697, 700 (E.D. Va.2000) (finding court must determine whether alleged injuries occurred on a federal enclave); Fung v. Abex Corp., 816 F.Supp. 569, 571 (N.D. Cal. 1992) (personal injury actions arising from asbestos exposure were proper subject of federal jurisdiction because asbestos exposure took place on federal enclaves).  Because no facts that the court can consider on this motion to dismiss brought under Rule12(b)(6) indicate the events underlying Plaintiffs' causes of action occurred on Edwards Air Force Base,[1] it is unnecessary to

---

[1] The court has taken judicial notice of Defendants' notice of removal.  Defendants notice of removal asserts that the events underlying this action occurred on Edwards Air Force Base, which Defendants claim is a federal enclave.  The court finds that this assertion, made without any evidentiary support, is insufficient to establish the events occurred on Edwards Air Force Base.  Because they removed this action, the burden is on Defendants to prove the existence of jurisdictional facts.   See Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992); Miller v. Grgurich, 763 F.2d 372, 373 (9th Cir.1985).  The existence of federal jurisdiction on

determine if Edwards Air Force Base is a federal enclave. Defendants have failed to establish that the events underlying this action even occurred at Edwards Air Force Base. Thus, the court cannot find the events at issue occurred on a federal enclave.

In addition, Defendants are advised that the court is not convinced, based on the briefing currently before the court, that Edwards Air Force Base is a federal enclave. Defendants offer no evidence that the United States formally accepted exclusive federal jurisdiction over Edwards Air Force Base, or its predecessor, Muroc Bombing and Gunnery Range. Defendants offer no evidence that the State of California ever consented to the exclusive federal jurisdiction of the United States. Defendants have cited no evidence or argument that Edwards Air Force Base provided a benefit to the United States. Defendants have cited no case finding that Edwards Air Force Base is a federal enclave over which the United States has exclusive federal jurisdiction. Simply put, Defendants have failed on this motion to dismiss to meet their burden to show Edwards Air Force Base is a federal enclave.

Defendants reliance on Hancock v. Train, 426 U.S. 167 (1976), to establish Edwards Air Force Base as a federal enclave is misplaced. Hancock v. Train involved a federal installation that was emitting pollution in a state that had a permitting system to regulate polluters. The question presented was whether the federal installation had to apply for and receive a permit from the state, and had to meet the substantive standards of the state act, or whether it only had to get a permit from the Environmental Protection Agency and meet the federal standards. The Supreme Court held that a federal agency performing a federal function is not required to submit to a state regulatory procedure, absent a "clear and unambiguous" congressional statement to that effect. Hancock, 426 U.S. at 179. At issue here is whether private Defendants can be sued for alleged violations of state law that allegedly occurred on federal land, not whether the United

---

removal is generally determined from the face of the plaintiff's complaint. See Louisville & Nashville R.R. v. Mottley, 211 U.S. 149, 153-54 (1908); Miller v. Grgurich, 763 F.2d 372, 373 (9th Cir. 1985); Salveson v. Western States Bankcard Ass'n, 731 F.2d 1423, 1426 (9th Cir.1984).

11

States is subject to California's pollution regulations.  Thus, Hancock v. Train offers little assistance on the federal enclave issue.

Defendant's reliance on Taylor v. Lockheed Martin Corporation, 78 Cal.App.4th 472 (2000) is also not persuasive.  In Taylor, the California Court of Appeal stated that a federal enclave "is created when the federal government purchases land within a state with the state's consent, which may be conditioned on the retention of state jurisdiction consistent with the federal use." Id, at 478.  The Court of Appeal stated that "the voluntary cession of land by a state to the federal government is an actual transfer of sovereignty." Id.  The Court of Appeal found in Taylor that the condition of a state's consent was met in that case because Section 34 of the former California Political Code granted a blanket consent to federal jurisdiction for any tract of land purchased or condemned by the United States for the purpose of erecting forts, magazines, arsenals, dockyards, and other needful buildings. Id. at 480.  Defendants have neither provided authority as to how Edwards Air Force Base was acquired nor whether Section 34 of the former California Political Code was the relevant statute at the time Edwards Air Force Base became a military instillation.  In addition, the issue of the United State's acceptance of exclusive jurisdiction was not at issue in Taylor because after the land had been purchased by the Army in 1941, the United States Government accepted jurisdiction over the property. Id. at 479-80.  Finally, unlike Taylor, it is not clear from the facts presented to this court that the conduct underlying this action occurred on Edwards Air Force Base.

The court is hesitant to find as a matter of law that Edwards Air Force Base is not a federal enclave and California law applies on this military instillation.  However, for the purposes of the pending motion, the court has no choice but to conclude that Defendants have not met their burden to prove that the events underlying this action occurred on Edwards Air Force Base and Edwards Air Force Base is a federal enclave.  Given the fact Edwards Air Force Base may well be a federal enclave, the court will allow Defendant an additional opportunity to raise this issue.  In addition, Plaintiffs request the opportunity to file an amended complaint that

addresses the enclave issue.

The Supreme Court in Paul v. United States, 371 U.S. 245 (1963), remanded the case for the lower court to determine if some of the land on which the milk was in fact sold was land over which the United States did not have exclusive jurisdiction. Id. at 269-30.  Similarly, the Ninth Circuit in Willis v. Craig, 555 F.2d 724, 726 (9th Cir.1977), remanded the action to the district court to make a finding on whether federal enclave jurisdiction existed.  Id. at 726.  Thus, the court finds that before concluding Edwards Air Force Base is not a federal enclave, which may well affect this court's jurisdiction, the parties should be given an opportunity to provide further briefing.  The court finds the appropriate procedure in light of the parties' requests and burdens on this issue is to allow Plaintiffs to file an amended complaint pursuant to their request and then allow Defendants the opportunity to file another motion that addresses the enclave issue.

**C. Wrongful Discharge in Violation of Public Policy**

Plaintiffs' first cause of action alleges wrongful discharge in violation of public policy.  Relying on Taylor and the federal enclave doctrine, Defendants contend that Plaintiffs' first cause of action for wrongful discharge in violation of public policy is barred.   Because the court finds that, at this time, there is no evidence the events underlying the first cause of action occurred on Edwards Air Force Base and it is not clear that Edwards Air Force Base is a federal enclave on which California law cannot apply, the court declines to dismiss the first cause of action for wrongful discharge in violation of public policy.   However, Plaintiffs have asked for the opportunity to amend the complaint, including the first cause of action.   Based on Plaintiffs' request, the court will dismiss the complaint with leave to amend.

**D. Punitive Damages for a Violation of California Labor Code § 6310**

Plaintiffs' second cause of action alleges a violation of  California Labor Code § 6310.  Defendants contend that Plaintiffs are not entitled to punitive damages for a cause of action brought under California Labor Code § 6310.  As such, Defendants request the court strike Plaintiffs' request for punitive damages.

California Labor Code § 6310(b) allows a cause of action for any employee who is discharged or discriminated against because the employee made a bona fide complaint regarding unsafe working conditions. California Labor Code § 6310(b) states that such an employee is entitled to "reinstatement and reimbursement for lost wages and work benefits." Based on the language of Section 6310(b), Defendants contend punitive damages for this cause of action are not available.

A wrongful termination action under California Labor Code § 6310 is not limited to statutorily-identified remedies. Freund v. Nycomed Amersham, 347 F.3d 752, 760 (9th Cir. 2003); Hentzel v. Singer Co., 138 Cal.App.3d 290, 301-02 159 (1982). Section 6310's remedies are not confined to the statute because if a statute prescribing a remedy does not create a new right or liability, but merely provides a new remedy for an independent and pre-existing right or liability, the new remedy is not exclusive but merely cumulative of other existing remedies, and does not eliminate the old remedy unless expressly stated. Freund, 347 F.3d at 760. Based on this authority, Defendants' motion to strike Plaintiffs' request for punitive damages must be denied. There is a set of "acts that could be proved consistent with the allegations of the complaint" that could entitle Plaintiffs to punitive damages. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Diaz v. Gates, 380 F.3d 480, 482 (9th Cir. 2004). However, because Plaintiffs have requested the opportunity to file an amended complaint, the complaint will be dismissed with leave to amend to allow Plaintiffs the opportunity to clarify the basis of this cause of action and the damages they request.

**D. Fraud**

Plaintiffs' third cause of action alleges fraud. Defendants contend Plaintiffs' fraud cause of action should be dismissed because the California Supreme Court has held that no cause of action for fraud lies for facts misrepresented by an employer to effect the termination of employment. Plaintiffs do not offer any reason why their fraud claim is not barred.

In Hunter v. Up-Right, Inc., 6 Cal.4th 1174, 1185 (1993), the plaintiff was falsely told by

14

his supervisor that the corporation had decided to eliminate his position. Id. at 1179. On the basis of that representation, the plaintiff signed a document setting forth his resignation. Id. At trial, a jury found in favor of the plaintiff on his fraud claim. Id. at 1180. The California Supreme Court granted the defendant's petition for review, and found that "wrongful termination of employment ordinarily does not give rise to a cause of action for fraud or deceit, even if some misrepresentation is made in the course of the employee's dismissal." Id. at 1178. The California Supreme Court explained that the defendant "simply employed a falsehood to do what it otherwise could have accomplished directly." Id. at 1184. The California Supreme Court reasoned that as a result, the plaintiff could not establish all the elements of fraud because the plaintiff did not rely to his detriment on the misrepresentation. Id. at 1184. The California Supreme Court  court concluded by stating that an employee could maintain an action for fraud "only if the plaintiff can establish all of the elements of fraud with respect to a misrepresentation that is separate from the termination of the employee contract, i.e., when the plaintiff's fraud damages cannot be said to result from the termination itself." Id.

The California Supreme Court further defined this exception in Lazer v. Superior Court, 12 Cal.4th 631 (1996). In Lazar, the defendant asked the plaintiff to leave his employment in New York and to work for the defendant in Los Angeles, falsely telling the plaintiff that his job in Los Angeles would be secure and would involve significant pay increases. Id. at 635-36. Shortly after the plaintiff relocated, he was fired, and the plaintiff filed an action alleging fraud Id. at 636-37. The California Supreme Court found that this case did not fall under Hunter. The California Supreme Court explained that Hunter "did not call into question generally the viability of traditional fraud remedies whenever they are sought by a terminated employee," but established that a plaintiff fails to state a claim for fraud if "the element of detrimental reliance [is] absent." Id. at 641, 643. In addition, the court stated Hunter precludes recovery for fraud "only where the result of the employer's misrepresentation is indistinguishable from an ordinary constructive wrongful termination." Id. at 643. The California Supreme Court found the

15

plaintiff had established the elements of fraud, including detrimental reliance, because unlike Hunter, the defendant's misrepresentations were made prior the formation of the employment relationship, when the plaintiff was free to decline the position. Id. at 642-43.

Together, Hunter and Lazar provide authority for the proposition that employees can maintain a cause of action for fraud against their employer only if they allege all of the elements of such a claim, including detrimental reliance, and if they allege damages distinct from the termination itself.   In this action, the basis of Plaintiffs' fraud claim is not entirely clear. It appears that Plaintiffs are alleging that Defendants misrepresented to Plaintiffs that they were being terminated because the company was going "to do away with their positions." See Complaint at ¶¶ 7 & 20.   After Plaintiffs were terminated, their positions were reinstated and new staff was hired. See id. at ¶ 7.  The complaint alleges that Defendants made these representations with the expectation that Plaintiffs would believe that their termination was justified rather than based on retaliation.  See id. at ¶ 22.  Plaintiffs seek punitive damages.  See id.

Plaintiffs' fraud claim appears to be analogous to that of the employee in Hunter.   Unlike the misrepresentation in Lazar, the alleged misrepresentations at issue here appear to have occurred during the employment relationship, when Defendants had "coercive power" over Plaintiffs.   Thus, like the employer in Hunter, Defendants appear to have simply employed a falsehood to do what they otherwise could have accomplished directly, i.e. fire Plaintiffs. Therefore, based on the allegations in the complaint, Plaintiffs did not rely to their detriment on the alleged misrepresentations because it appears Defendants could have fired Plaintiffs for a reason unrelated to the misrepresentations. Accordingly, Defendants' motion to dismiss Plaintiffs' fraud claim is granted.   However, "[i]f a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1401 (9th Cir. 1986).  Here,

because it is not completely clear that Plaintiffs will be unable to allege detrimental reliance, leave to amend will be granted.

**F.  Request to Amend**

In their opposition, Plaintiffs request leave to file an amended complaint.  Plaintiffs state that they would like the opportunity to allege facts showing that the federal enclave doctrine does not apply, allege additional facts regarding their causes of action, and allege new causes of action.

Rule 15(a) of the Federal Rules of Civil Procedure provides that a "party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served. . . . Otherwise a party may amend only by leave of court. . . ."   A motion to dismiss for failure to state claim is not a "responsive pleading" that would terminate a plaintiff's right to amend the complaint.  Doe v. United States, 58 F.3d 494, 497 (9th Cir.1995); Schreiber Distrib. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir.1986); Mayes v. Leipziger, 729 F.2d 1389 605, 607 (9th Cir.1984); Breier v. Northern California Bowling Proprietors' Ass'n, 316 F.2d 787, 789 (9th Cir.1963).   Because Defendants did not file a responsive pleading, but only a motion to dismiss, Plaintiffs do not need leave of court to file an amended complaint.  See Allwaste, Inc. v. Hecht, 65 F.3d 1523, 1530 (9th Cir. 1995); Doe, 58 F.3d at 497.   Plaintiffs are free to file an amended complaint.

In addition, when dismissing a complaint, the Ninth Circuit has stated that "leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts."  Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir.2001) (internal quotation marks omitted); Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. (9th Cir. 1996).  Here, it is not clear that the complaint could not be saved by amendment.  Additional allegations could show that the events at issue did not occur on a federal enclave and/or that Edwards Air Force Base is not a federal enclave.   Additional allegations could be made that are consistent with a cause of action for fraud.  Additional allegations could be made

to support related causes of action.

When filing any amended complaint or further motions, the parties are cautioned to review this order, the federal enclave doctrine, and the situations when employees can sue their employers for fraud. The parties are advised that all pleadings must be based upon a well-founded belief that a cognizable or arguable legal theory exists that would support the pleading. See Fed. R. Civ. P. 11; Les Shockley Racing Inc. v. National Hot Rod Ass'n, 884 F. 2d 504, 510 (9th Cir. 1989).

The parties are also reminded that pursuant to Title 28 U.S.C. § 1447(c), the court will remand this action if at any time prior to judgment it appears that the court lacks subject matter jurisdiction. The party that seeks to remain in federal court has the burden of proof to avoid remand to state court. Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992); Miller v. Grgurich, 763 F.2d 372, 373 (9th Cir.1985); Conrad Associates v. Hartford Accident & Indemnity Co., 994 F.Supp. 1196, 1198 (N.D.Cal.1998). As such, if any amended complaint contains no federal cause of action, Defendants will be required to prove that this court has jurisdiction because Edwards Air Force Base is a federal enclave on which the United States exercises exclusive federal jurisdiction and the events at issue occurred within this federal enclave.

//
//
//
//
//
//
//
//

**ORDER**

Accordingly, for the reasons stated in the above Memorandum Opinion, IT IS HEREBY ORDERED that:

1. Defendants' motion to DISMISS is GRANTED;
2. Defendants' motion to STRIKE is DENIED;
3. The complaint is DISMISSED WITH LEAVE TO AMEND;
4. Any amended complaint SHALL BE FILED within thirty days of this order's date of service; and
5. Any answer or responsive pleading SHALL BE FILED within twenty days of the date on which Plaintiffs file their amended complaint.

IT IS SO ORDERED.

**Dated:**   **March 24, 2006**           /s/ **Anthony W. Ishii**
9h0d30                                    UNITED STATES DISTRICT JUDGE